Robert **HOOPER, et al., Appellants,**

v.

**ZURICH AMERICAN INSURANCE COMPANY, Respondent,**

**Constitution State Insurance Company, Defendant,**

**Dana L. Marcelius, Respondent,**

v.

**HOME INSURANCE COMPANY, Third–Party Defendant,**

**Western National Mutual Insurance Company, third-party defendant, Respondent.**

No. C9–96–108.

Court of Appeals of Minnesota.

July 23, 1996.

Review Denied Sept. 20, 1996.

Peter J. Krieser, Krieser & Bieniek, St. Louis Park, John S. Schomburg, Minnetonka, for Appellants.

Dan T. Ryerson, James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for respondent Western National Mutual Ins. Co.

Peter G. VanBergen, Andrea E. Reisbord, Cousineau, McGuire & Anderson Chartered, Minneapolis, for respondent Zurich American Ins. Co.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and HOLTAN, J.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HUSPENI, Judge.

Appellants sued respondents, their insurers, for defense and indemnification in two lawsuits after judgment had been rendered against appellants in one suit and the other had settled unfavorably to them. Respondents were awarded summary judgment on the grounds that the lawsuits had never been tendered to respondents as required by appellants' policies and that respondents were prejudiced by appellants' failure to tender the actions prior to incurring liability. Because we hold that where an insurance policy mandates notice to the company as the means of tendering defense, defense is not tendered by the insured's mentioning the lawsuit to an agent and that an insurer is prejudiced as a matter of law when defense is not tendered until after trial and the entry of judgment, we affirm.

## FACTS

Dana Marcelius, an insurance agent employed by Mid–Continent Agencies, Inc., acquired appellant Robert Hooper as a client in 1983. In December 1983, Hooper, his wholly-owned company, appellant B & H Supply, Inc. (B & H), and a new wholly-owned company, appellant Superior Plug Inc. (Superior), began manufacturing sewer plugs. These plugs were extremely similar to those manufactured by Cherne Industries, which sued Hooper and Superior in state court in June 1984 (the state Cherne action) and in federal court in March 1985 (the federal Cherne action).

Hooper was insured by respondent Zurich American Insurance Company (Zurich) when Cherne brought its state action; both Hooper and Superior were insured by Zurich when Cherne brought the federal action. The Zurich coverage terminated and coverage by respondent Western National Mutual Insurance Company (Western) began on November 1, 1985. In April 1986, Cherne amended the complaints in both actions to include B & H, which was at that time also insured by Western.

The Zurich and Western comprehensive general liability (CGL) policies issued to appellants give specific directions regarding notice.

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured **to the Company or any of its authorized agents** as soon as practicable.

(Emphasis added.) In both policies, the directions for notice in the event of an occurrence differ from the directions for notice in the event of a claim or lawsuit.

> If claim is made or suit is brought against the insured, the insured shall immediately forward **to the Company** every demand, notice, summons or other process received by him or his representative.

(Emphasis added.) The alternative of providing notice to an authorized agent rather than the company is not available once a claim is made or a suit is brought. Both policies also state that "[n]o action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."

Western also issued an umbrella policy, providing that:

> Upon the happening of an occurrence reasonably likely to involve the Company hereunder, written notice shall be given as soon as practicable to the Company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time.

> The insured shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun, the insured, when requested by the Company, shall forward to it each paper thereon, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations made by the insured with respect to such claims proceedings.

No insurance company involvement was sought in either Cherne action. In late 1987, the federal action was resolved with a judgment against appellants and the state action was resolved with a settlement unfavorable to them. Appellants sent their customers a memo in November 1987 advising them of the Cherne actions, of the decision already handed down in the federal action, and of Hooper's filing for Chapter 11 bankruptcy. A copy of the memo was sent to Western.

After the Cherne actions were resolved, Hooper brought a malpractice action against the law firms that had defended him. The statement of the case in the malpractice action asserted:

> There were allegations in the federal action, as well as the state action, * * * for which Superior Plug and Hooper had insurance coverages, but there was no tender of the defense at any time to any insurer. The policies were obtained by [the attorneys] and produced in the course of discovery and [the attorneys] further made affirmative representations during the course of the [Cherne] action, including a statement of the case, that there was no insurance applicable.

The malpractice action was resolved with a confidential settlement.

Hooper then brought this action against two insurers, the Constitution State Insurance Company and respondent Zurich, and its insurance agent, Dana Marcelius, for defense and indemnification in the Cherne actions. Constitution sued the Home Insurance Company and respondent Western as third-party defendants. After the claims against Constitution and Home were settled with *Pierringer* releases, appellants filed a cross-claim against respondent Western.

Respondents moved for summary judgment, which was granted on the grounds that Hooper had not fulfilled the conditions of his and his companies' policies with Zurich and Western by tendering the underlying actions to them and that Zurich and Western were prejudiced by appellants' failure to tender defense of the actions.

## ISSUES

1. When an insurance policy mandates that notice of a lawsuit be given to the insurance company, is mentioning the lawsuit to an independent insurance agent a tender of defense?

2. Does an insured's claim in an attorney malpractice action that defense of a lawsuit was not tendered to insurers preclude the insured from claiming that defense was tendered in a later action against the insurers?

3. Is an insurer prejudiced as a matter of law where defense of a lawsuit is not tendered until after the entry of judgment against the insured?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "[T]he interpretation of insurance contract language is a question of law as applied to the facts presented." *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992).

 As a threshold matter, we note that respondent Western moved separately for summary judgment on the ground that it was not appellants' insurer when the events giving rise to the Cherne actions occurred or when those actions were brought. The district court did not address this issue. We are mindful of the prohibition against addressing matters not considered by the district court, *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988), but note that when an issue not determined by the district court is dispositive as to one party to an appeal, we may address that issue. *Harms v. Independent School Dist. No. 300,* 450 N.W.2d 571, 577 (Minn.1990). Insurance is procured not to cover loss but to cover the risk of loss. *See Waseca Mut. Ins. Co. v. Noska,* 331 N.W.2d 917, 925 n. 6 (Minn.1983) (where loss has occurred, there is no longer any risk); *Oster v. Riley,* 276 Minn. 274, 287, 150 N.W.2d 43, 52 (1967) (Otis, J., dissenting) ("it is absurd to assume that a company can legally bind itself to a loss which at the time of the initial

undertaking it knows has already taken place"). Because appellants acquired their Western policy not when they risked being sued but after they had been sued, their loss was in progress, and they could not at that point insure against it. *See Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 178–79 (6th Cir.1993) (adopting the "loss in progress" theory, precluding coverage for losses of which the insurance company is aware at the time the policy is issued).

◼ Hooper argues that the Western umbrella policy provides that defense be tendered, or papers forwarded "when requested by the Company" and that Western never requested the papers. We note that because Western did not become the insurer of Hooper and Superior until 17 months after the state action was begun and eight months after the federal action was begun, it did not know of the actions, and therefore could not request tender of their defense.

## 1. The Tender of Defense

Both the Zurich and the Western CGL policies specify that if a suit is brought against an insured, the insured shall forward any demand, notice, summons, or other process to the insurance company. It is undisputed that neither the summonses nor any other papers received in the two Cherne actions were forwarded to the insurance companies: Hooper himself testified to this.

> [A] trial court must determine if an insured has met all notice requirements as a condition precedent to determining whether there exists a duty to defend or indemnify.

*Jostens, Inc. v. CNA Insurance/Continental Casualty Co.*, 403 N.W.2d 625, 629 (Minn. 1987). Appellants' failure to comply with the notice requirements was the basis for the district court's holding that there was no duty to defend or indemnify.

Appellants cite *SCSC Corp. v. Allied Mut. Ins. Co.*, 533 N.W.2d 603 (Minn.1995), to

argue that the oral notice Hooper allegedly provided to Marcelius triggered at least the requirement to defend. *SCSC* is distinguishable: A duty to defend was found because the insured had sent the insurer a letter relating that claims had been brought, describing the claims, asking for indemnification, and citing specific policy numbers. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn.1995) (amending *SCSC Corp. v. Allied Mut. Ins. Co.*, 533 N.W.2d 603 (Minn.1995)).[1] Here, the insured never contacted the insurer with any information about the lawsuits.

◼ Hooper argues that his alleged mention of the lawsuits in conversation with Marcelius constituted a tender of defense. While there appears to be no Minnesota case law on this issue, it has been addressed elsewhere. Language almost identical to that in the policies at issue here has been construed by the Iowa Supreme Court.

> [The insured] maintains that it gave notice of the * * * suits to its insurance broker * * *. However, even if we assume that insured's broker is an authorized agent of defendant insurers and that he received reasonable notice of the * * * suits, the assumption does not prevent our conclusion that [the insured] failed to comply with the "notice of suit" provisions.

> At most, the status of [the insured's] insurance broker as an agent of defendant insurers for purposes of receiving notice is only relevant to insured's substantial compliance with the defendant insurance companies' policies' "notice of occurrence" provisions. Each of the "notice of occurrence" provisions provided that notice of an occurrence may be given to either the insurer or its authorized agent.

> The status of [the insured's] insurance broker is not relevant, however, to its substantial compliance with the insurance policies' "notice of suit" conditions. As mentioned, the "notice of suit" conditions required [the insured] to give prompt notice of claims

---

1. *SCSC* also reversed an award of attorney fees for the period prior to the tender of defense, holding that although the insurer had a duty to defend the insured from the time the claim arose, the insured did not invoke the duty until it prop- erly tendered its defense request. *Id.*, 536 N.W.2d at 317. *SCSC* therefore supports the view that respondents' alleged duty to defend was never invoked because no request for defense was ever tendered.

and suits directly to the insurance companies; they did not provide the insured with the option of giving notice to the insurers' authorized agents. Simply stated, [the insured] cannot rely upon any alleged notice of suit given to an alleged agent of defendant insurers, since the policies expressly obligated insured to give notice of suit directly to the insurance companies by immediately forwarding to them the relevant legal documents, which, as mentioned, [the insured] did not do.

*Met–Coil Systems Corp. v. Columbia Casualty Co.*, 524 N.W.2d 650, 655–56 (Iowa 1994). We find the reasoning of the Iowa court persuasive. Where a policy mandates that an insured notify its insurance company of a lawsuit, the insured does not have the option of tendering defense by mentioning the lawsuit to a broker. Like the Iowa court, we note the policies' distinction between notice procedures in the event of an occurrence and notice procedures in the event of a claim or suit.

Hooper cites *St. Paul Fire & Marine Ins. Co. v. Metropolitan Urology Clinic*, 537 N.W.2d 297 (Minn.App.1995), to argue that even defective notice will trigger an insurance company's duty to investigate. In *St. Paul Fire & Marine*, however, the question was not the existence of notice but the sufficiency of a notice that did not furnish all the information required in the policy provision; the court found there was "substantial compliance" with the policy. *Id.* at 300. Here, there was no compliance with the provision requiring notice of suits, and the only indication of compliance with the provision requiring written notice was Hooper's testimony that he pointed to a pile of papers on his desk at a meeting when he allegedly told Marcelius about the lawsuits.

### 2. Hooper's Statement in the Malpractice Action

■ Hooper asserted in the statement of the case in his February 1991 malpractice action that "there was no tender of the defense at any time to any insurer." A party cannot assert a position in one legal proceeding which is inconsistent with the position taken by that party in another legal proceed-

ing. *Held v. Mitsubishi Aircraft Int'l, Inc.*, 672 F.Supp. 369, 391 (D.Minn.1987). Hooper's assertion in this action that defense was tendered to his insurers is not merely inconsistent with but directly opposed to his position in the malpractice action; he is therefore estopped from asserting it.

### 3. Prejudice to Respondents

■ To defeat liability, an insurer must show prejudice from the insured's delay in giving notice of a claim. *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 307 Minn. 338, 341, 239 N.W.2d 922, 924–25 (1976). The district court held that as a matter of law appellants' failure to tender was prejudicial to respondents: "no reasonable trier of fact could find otherwise." While appellants do not challenge this holding on appeal, we address it in the interest of completeness. *See* Minn. R. Civ.App. P. 103.04 (enabling this court to review any matter "as the interest of justice may require").

■ The dispositive factor is not how much time elapses prior to the tender of defense; it is what happens during that time. *See id.*, 307 Minn. at 343, 239 N.W.2d at 925 (holding that 18–month delay between service of complaint and notification of insurer did not defeat liability because the facts had not changed, the investigation would not be more difficult, and the matter had not been reduced to judgment); *see also Dairyland Ins. Co. v. Clementson*, 431 N.W.2d 895, 899 (Minn.App.1988) (six and one-half year delay held not to be prejudice per se; insurer held liable because it suffered no actual prejudice from inability to investigate or to conduct an adverse medical examination); *Noon Realty, Inc. v. Aetna Ins. Co.*, 387 N.W.2d 465, 467–68 (Minn.App.1986) (seven year delay between service of complaint and notification of insurer defeated liability because insurer was prejudiced by having no opportunity to protect its interests by investigation and certain documents and parties were no longer available).

■ Here, the delay meant that respondents had no opportunity to control the litigation in either Cherne action, to seek a declaratory judgment regarding coverage, or

to attempt settlement before the adverse federal judgment. We agree with the district court's observation that no reasonable trier of fact could find that respondents were not prejudiced by appellants' delay in tendering defense.

## DECISION

Appellants failed to comply with the provisions of their policies by not forwarding the pleadings to respondents. Appellants may not now argue that defense was tendered because they argued in a prior action that it had not been tendered. Respondents were prejudiced by appellants' failure to provide notice of suits.

**Affirmed.**