NORTH STAR MUTUAL INSURANCE COMPANY, Appellant,

v.

MIDWEST FAMILY MUTUAL INSURANCE COMPANY, Secura Insurance Company, Respondents.

No. C9–01–514.

Court of Appeals of Minnesota.

Sept. 25, 2001.

Frank J. Rajkowski, Rajkowski Hansmeier Ltd., St. Cloud, for appellant.

Dale M. Wagner, Louis J. Speltz, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent Midwest Family Mutual Insurance Company.

Julius W. Gernes, Scott H. Rauser, Spence, Ricke, Sweeney & Gernes, St. Paul, for respondent Secura Insurance Company.

Considered and decided by HANSON, Presiding Judge, WILLIS, Judge, and HALBROOKS, Judge.

## OPINION

WILLIS, Judge.

Appellant North Star Mutual Insurance Company (North Star) challenges the district court's grant of summary judgment dismissing its contribution claim against respondents Secura Insurance Company (Secura) and Midwest Family Mutual Insurance Company (Midwest Family), arguing that because the policies of respondents were closer to the risk, it may recoup from them part of the money North Star paid to settle the injured party's claim. By notices of review, Midwest Family argues that the tortfeasor was not an insured under its policy and both respondents claim that they were prejudiced because North Star settled the claim without providing notice of the intended settlement. Because we conclude that Secura did not demonstrate prejudice, we affirm in part, but because we conclude that Midwest Family's policy did not cover the tortfeasor's negligence and that Secura's policy had priority, we reverse in part.

## FACTS

In December 1993, Richard J. Smith was changing a tire on Mavis Swenson's van in Smith's barn with the assistance of Michael Harvieux. Smith knew that the tire was the incorrect size for the van's rim. The tire exploded when he inflated it, causing Harvieux serious injury. At the time of the accident, appellant North Star insured Smith against liability for bodily injuries under a general farm-liability policy and respondent Secura insured Smith's automobiles. Respondent Midwest Family insured Swenson's van.

Harvieux received basic economic-loss benefits from his no-fault carrier and medical expenses from his health insurer. In April 1997, he sued Smith for his injuries. Smith tendered defense of the lawsuit to North Star. Without informing either respondent about the accident, Smith and North Star settled Harvieux's claim in May 1998 for $235,000. Both respondents first learned about the accident and the settlement in February 1999.

In April 2000, North Star sued Midwest Family and Secura for contribution, attempting to recoup $50,000 from each insurer, the liability limits for bodily injury for each policy, on the theory that their policies were closer to the risk than its own. All three parties moved for summary judgment. In its motion, Midwest Family argued that Smith was not an insured under its policy with Swenson. Further, Midwest Family and Secura claimed independently that North Star's failure to give notice of the intended settlement pre-

cluded North Star from recovering from each. The district court granted summary judgment to Midwest Family and Secura on the ground that North Star's policy was closer to the risk, but it rejected Midwest Family's argument regarding coverage and respondents' arguments regarding notice.

North Star appeals the denial of its motion for summary judgment. By notice of review, Midwest Family challenges the district court's determination that Smith was insured under Swenson's policy, and both Midwest Family and Secura challenge the district court's determination that they were not prejudiced by North Star's failure to provide the notice required by their policies.

### ISSUES

1. Does Midwest Family's automobile-liability insurance policy with Swenson cover Smith's negligence?

2. Was Secura prejudiced by North Star's failure to provide notice?

3. Was Secura's coverage primary?

### ANALYSIS

On appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The parties do not dispute the facts of this case.

### I.

■ As a threshold issue, Midwest Family contends that the district court erred by finding that there was a "sufficient casual connection" to include Smith as an insured under its policy. The interpretation of an insurance policy and its application to the facts of a case present questions of law, which this court reviews

de novo. *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 608 (Minn.2001).

At the time of Harvieux's injuries, Swenson's policy provided: "We will pay damages for 'bodily injury' * * * for which any 'insured' becomes legally responsible because of an auto accident." In pertinent part, the policy defined "insured" as:

1. You or any "family member" for the ownership, maintenance, or use of any auto or trailer.

2. Any person using "your covered auto."

Under the policy, "you" referred to Swenson and her spouse, if she was married and her spouse resided with her; "family member" referred to a person related to Swenson by blood, marriage, or adoption, if the person resided with her. Because there is no evidence that Swenson and Smith were married to each other or related to each other at the time of the accident, Smith is not an "insured" under the first definition.

North Star argues that Smith is an insured under the second definition. Minnesota law provides "reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (2000). This reimbursement is available only to or on behalf of a person who is an insured under an automobile-liability policy. Smith is not a statutory insured under Swenson's policy. *See* Minn.Stat. § 65B.43, subd. 5 (2000) (providing that "insured" includes the named insured and the named insured's family members, while residing in the same household). Therefore, we must determine whether the policy extended coverage beyond the statutory requirement to include Smith.

■ Midwest Family's policy provided coverage to any person "using" Swenson's van. Words of an insurance policy "are to be given their natural and ordinary mean-

ing." *Am. Family*, 628 N.W.2d at 609 (citation omitted). The ordinary meaning of "using" does not include changing a tire; this activity is ordinarily considered maintenance of a vehicle. *See Marklund v. Farm Bureau Mut. Ins. Co.*, 400 N.W.2d 337, 339 (Minn.1987) (noting distinction between "use" and "maintenance" of motor vehicle); *Midwest Family Mut. Ins. Co. v. Karpe*, 430 N.W.2d 856, 859 (Minn.App. 1988) (describing tire repair as "maintenance"), *review denied* (Minn. Dec. 21, 1988). We conclude that Smith is not an insured under the second definition.

Further, although Minnesota law presumes that a vehicle's driver is an agent of the vehicle's owner, there is no corresponding statutory presumption that a vehicle's mechanic is an agent of the vehicle's owner, and our review of Minnesota caselaw reveals none. *See* Minn.Stat. § 170.54 (2000) (deeming driver who operates vehicle with consent of owner to be agent of owner). Because Smith is not an insured under Swenson's policy and Swenson is not liable for his negligence, North Star cannot seek contribution from Midwest Family for settling Harvieux's claim. Accordingly, we do not reach Midwest Family's claim that it was prejudiced by North Star's failure to provide notice of the settlement.

## II.

Secura argues that it was prejudiced by North Star's settlement of Harvieux's claim before providing Secura with notice. Secura's insurance policy with Smith states that the insured must notify Secura "as soon as reasonably possible" of "every accident, occurrence or loss" and must "promptly" send Secura "any legal papers received relating to a claim or suit." The policy further provides that Secura "may not be sued unless there has been full compliance with all the terms of this policy." Smith never notified Secura of the accident and resulting loss. But Secura had actual notice in February 1999, when North Star sought contribution, and in its arguments on appeal, Secura treats North Star's notice as equivalent to a notice by Smith.

■ Under Minnesota law, late notice by an insured defeats coverage if the insurer is prejudiced.[1] *Reliance Ins. Co. v. St. Paul Ins. Companies*, 307 Minn. 338, 342, 239 N.W.2d 922, 925 (1976) (concluding that showing of actual prejudice by insurer is required to defeat liability). The burden of proving prejudice is on the insurer claiming prejudice. *Id.*, 307 Minn. at 342, 239 N.W.2d at 925.

■ First, Secura contends that it was prejudiced because it was unable to con-

---

1. In its motion for summary judgment, Secura argued that its policy's notice provision was a condition precedent to liability. *See Sterling State Bank v. Virginia Surety Co.*, 285 Minn. 348, 354–55, 173 N.W.2d 342, 346 (1969) (stating that failure to furnish notice and proof of loss within policy deadlines does not invalidate insurance policy except "where giving such notice or proof is a condition precedent of liability under the insurance contract"). The district court disagreed. On appeal, Secura comments, without further argument, that the district court relied on an "inapposite" case in deciding that issue. But "[a]n assignment of error based on mere assertion and not supported by any argument or authorities * * * is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn.App.1997) (quotation omitted). Secura's policy provided that Smith should inform Secura or its authorized agent "as soon as reasonably possible" after every accident, occurrence, or loss. This language does not create a condition precedent. *Cf. Reliance Ins. Co.*, 307 Minn. at 341–43, 239 N.W.2d at 924–25 (reviewing failure to comply with policy requiring notice of claim or suit "as soon as practicable" to determine if prejudice to insurer occurred).

duct a meaningful investigation of the accident and Harvieux's claimed injuries. We disagree. In *Dairyland Ins. Co. v. Clementson*, a passenger who was injured in a one-car accident and covered under her father's automobile-insurance policy with Mutual Service Insurance Company (MSI) settled a claim for uninsured-motorist benefits in 1981 and renegotiated the settlement in 1986. *Dairyland Ins. Co. v. Clementson*, 431 N.W.2d 895, 896–97 (Minn. App.1988). Later in 1986, MSI learned that the passenger was also an insured under her brother's automobile insurance policy with Dairyland, and it sought pro rata reimbursement from Dairyland. *Id.* Dairyland claimed that it was prejudiced, but on appeal, this court disagreed:

> [T]he accident involved only one vehicle in which [the injured party] was a passenger. Other than a mere claim of prejudice, respondent offers no facts which would suggest negligence by anyone other than the driver.

*Id.* at 898.

Here, as in *Dairyland*, the circumstances of the accident causing the injury are not complicated: an improperly sized tire fitted to a rim exploded when Smith inflated it, causing serious injuries to Harvieux. Nothing in the record suggests that anyone other than Smith was negligent. Secura has not asked to conduct a medical examination of Harvieux and has presented no evidence that his injuries were not serious or that the notification delay prejudiced its ability to investigate the accident.

■ Second, Secura claims that North Star's unilateral settlement "runs afoul of Minnesota law applying the Miller-Shugart doctrine." In a Miller-Shugart settlement,

> the insurer has denied all coverage, and the abandoned insured, left on its own, agrees with the plaintiffs that judgment in a certain sum may be entered against

it in return for the plaintiffs releasing the insured from any personal liability.

*Zurich Reinsurance (UK) Ltd. v. Canadian Pacific Ltd.*, 613 N.W.2d 760, 764 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000); *see Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982). The insurer is bound by the settlement only if it was reasonable and prudent and was not obtained by fraud or collusion. *Miller*, 316 N.W.2d at 734–35. But because North Star provided full coverage to Smith and settled Harvieux's claim, this case does not involve a Miller-Shugart settlement.

Finally, Secura argues that it was prejudiced because it was unable to participate in settlement negotiations with Harvieux, citing *Hooper v. Zurich Am. Ins. Co.*, 552 N.W.2d 31 (Minn.App.1996), *review denied* (Minn. Sept. 20, 1996). In *Hooper*, this court stated that insurers were prejudiced as a matter of law by the insureds' failure to inform them of federal and state lawsuits until after the federal lawsuit was resolved with a judgment against the insureds and the state action was settled:

> Here, the delay meant that [the insurers] had no opportunity to control the litigation in either * * * action, to seek a declaratory judgment regarding coverage, or to attempt settlement before the adverse federal judgment.

*Id.* at 32, 36. Relying on this language, Secura claims that because it did not receive notice until after the settlement, it was prejudiced as a matter of law. We disagree. The appellants in *Hooper* did not challenge the initial ruling of the district court that the insurers were prejudiced, and this court considered the issue only "in the interest of completeness." *Id.* at 36. Because the issue was not before the court, our discussion of the issue was dictum and is not binding in subsequent cases. *See Kissoondath v. U.S. Fire Ins.*

*Co.,* 620 N.W.2d 909, 915 (Minn.App.2001) (explaining dicta), *review denied* (Minn. Apr. 17, 2001).

To succeed in its argument, Secura must show that its inability to participate in the settlement negotiations resulted in actual prejudice. *See Reliance Ins. Co.,* 307 Minn. at 342, 239 N.W.2d at 925. Secura has not shown that it would have avoided liability if it received timely notice or that its payment obligation would be lower than its policy limit of $50,000. As the district court noted, "[t]here is no dispute here about Harvieux's damages or the manner in which the accident occurred." We conclude that Secura was not prejudiced by North Star's failure to notify Secura of the settlement until after it occurred.

### III.

■ Neither North Star nor Secura has claimed that its policy does not cover the loss created by Harvieux's injuries.[2] Neither policy provided priority coverage by statute. *See* Minn.Stat. § 65B.49, subd. 3(3)(d) (2000) (providing that "residual liability insurance policy [is] excess of a non-owned vehicle policy"). Thus, we first consider whether the "other insurance" clauses in the policies determine priority of coverage. *See CPT Corp. v. St. Paul Fire & Marine Ins. Co.,* 515 N.W.2d 747, 751 (Minn.App.1994), *review denied* (Minn. July 27, 1994).

At the time of Harvieux's injuries, Secura's "other insurance" clause stated, in pertinent part:

Any insurance we provide for * * * any other vehicle you do not own shall

be excess and shall apply only after any other applicable insurance, including any physical damage insurance, is exhausted.

North Star's "other insurance" clause for personal liability stated: "This insurance is excess over other valid and collectible insurance that applies to the loss or claim." Because each policy's "other insurance" clause provided for coverage only after all other applicable insurance coverage was exhausted, the clauses conflict. *See Illinois Farmers Ins. Co. v. Depositors Ins. Co.,* 480 N.W.2d 657, 660 (Minn.App.1992) (concluding that excess clauses conflict).

Because the clauses conflict, we must then determine the respective rights of the insurers. Caselaw developments have given rise to two different approaches to apportioning liability among insurers providing overlapping coverage.

In *Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.,* the supreme court described a three-part analysis for determining the respective liabilities of such insurers:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of a greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy[—]that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.,* 281 N.W.2d 700, 704 (Minn.1979).

---

**2.** Secura did not present to the district court the issue of whether its policy covers Harvieux's injuries, and we decline to consider it on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that reviewing court will generally not consider issues that were not presented to and considered by district court). Further, we note that the insur-

ing clause of Secura's policy does not limit Secura's liability to only those cars named in the policy: "We will pay damages for which an insured person is legally liable because of bodily injury * * * resulting from the ownership, maintenance, or use of a car or utility trailer."

But in subsequent cases, a separate analysis was identified:

> It appears to us that, in this case, rather than applying the three-part "closest-to-the-risk" test, it is more helpful to use the broader approach * * * of allocating respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy.

*Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82, 86 (Minn.1988).

In *Garrick v. Northland Ins. Co.,* the supreme court reaffirmed the existence of two separate analyses: the "broader" analysis involving "total policy insuring intent" and the three-part *Auto Owners* analysis. *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 712 (Minn.1991); *see Richardson v. Ludwig,* 495 N.W.2d 869, 874 (Minn.App. 1993) (describing caselaw development of both analyses), *review denied* (Minn. Apr. 20, 1993). This court has held that "total policy insuring intent" analysis "applies when the policies were intended to cover risks differing in kind and in size" and is considered "broader" than the three-part analysis of *Auto Owners* "only in the sense that it involves more than a mechanical application of the three factors set out in *Auto Owners.*" *Richardson,* 495 N.W.2d at 874. Recent decisions of this court have performed both analyses and begin with the *Auto Owners* analysis. *See, e.g., Richardson,* 495 N.W.2d at 874–75; *CPT Corp.,* 515 N.W.2d at 751–52.

#### A. Specific description

■ Neither policy contains a specific description of the tire that exploded and caused Harvieux's injuries, and so neither contains a more specific description of the accident-causing instrumentality than the other.

#### B. Premium

Smith paid Secura semi-annual premiums of $54.60 and $49.10 for his two cars for liability insurance against bodily injury and paid North Star a semi-annual premium of $71.10 for general liability insurance for his farm. The district court determined that North Star's premium reflected a "greater contemplated exposure" than Secura's. We disagree. The premiums received by each insurer were fairly close in amount and do not establish that one contemplated greater exposure to this risk than the other.

#### C. Primary/Incidental coverage

■ Secura's policy insured Smith against liability for "bodily injury * * * resulting from the ownership, maintenance, or use of a car or utility trailer." North Star's policy provides "principal coverage" to Smith against liability for "bodily injury * * * caused by an occurrence to which this coverage applies." North Star's policy excluded from coverage bodily injury that

> results directly or indirectly from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of
>
> > motorized vehicles * * *
>
> owned, operated or used by or rented or loaned to an insured.

But because Swenson's van was not owned, operated, or used by Smith and not rented or loaned to him at the time of the accident, the exclusion does not apply here, and both policies provide primary coverage for the injuries to Harvieux.

We conclude that neither policy is closer to the risk under the analysis of *Auto Owners,* and turn to the "total policy insuring intent" analysis.

### D. "Total Policy Insuring Intent"

Secura's policy specifically insured Smith against liability for bodily injury resulting from the maintenance of a car. North Star agreed to provide general insurance coverage for bodily injuries and its policy excluded almost all forms of liability arising from maintenance of a motorized vehicle. Replacing a tire unquestionably is maintenance of a motor vehicle. *See Midwest Family,* 430 N.W.2d at 859 (determining that tire replacement is maintenance). Based on the insuring intent of the policies, we conclude that Secura's policy had priority. Therefore, North Star is entitled to a $50,000 contribution from Secura, the liability limits for bodily injury provided by Secura's policy.

### DECISION

The district court correctly determined that Secura did not show prejudice, and therefore we affirm in part. But because we conclude that Smith is not an insured under Midwest Family's insurance policy with Swenson and that Secura's policy had priority, we reverse in part.

**Affirmed in part and reversed in part.**