FILED

May 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 14-0412

OP 14-0412

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 149

ATLANTIC CASUALTY INSURANCE COMPANY,

Plaintiff and Appellee,

v.

JOHN P. GREYTAK; TANGLEWOOD
INVESTORS LIMITED PARTNERSHIP,

Defendants and Appellants,

and

GTL, INC.

Defendant.

| | |
|---|---|
| ORIGINAL PROCEEDING: | Certified Question, United States Court of Appeals for the Ninth Circuit<br>Hon. M. Margaret McKeown, Hon. Paul J. Watford, Hon. Barbara Jacobs Rothstein, Presiding Judges |

COUNSEL OF RECORD:

For Appellants:

Quentin M. Rhoades, Nicole Siefert, Rhoades & Siefert, P.L.L.C., Missoula, Montana

For Appellee:

Matthew K. Hutchison, Valori E. Vidulich, Kaufman Vidal Hileman & Ellingson, P.C., Kalispell, Montana

For Amici Curiae:

Justin Stalpes, Beck & Amsden, PLLC, Bozeman, Montana
(for Montana Trial Lawyers Association)

John Alke, Northwestern Energy, Helena, Montana
(for Northwestern Energy and Clark Fork & Blackfoot, LLC)

John M. Morrison, Linda M. Deola, Morrison Sherwood Wilson
& Deola, PLLP
(for the Estate of Judith Gleason)

Randall J. Colbert, Scott W. Farago, Garlington, Lohn & Robinson, PLLP
(for Central United Life Insurance Company)

Joseph Seifert, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.,
Helena, Montana

Laura A. Foggan, Willey Rein LLP, Washington, DC
(for Complex Insurance Claims Litigation Association)

Submitted on Briefs:  January 14, 2015
Decided:  May 29, 2015

Filed:

_____
Clerk

2

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This matter comes to the Court pursuant to M. R. App. P. 15 on a question of Montana law certified by the United States Court of Appeals for the Ninth Circuit:

> Whether, in a case involving a claim of damages by a third party, an insurer who does not receive timely notice according to the terms of an insurance policy must demonstrate prejudice from the lack of notice to avoid defense and indemnification of the insured.

This Court accepted the certified question by Order of July 8, 2014, and the parties and several amici curiae have filed briefs.

¶2     We answer the question:  yes.

## BACKGROUND

¶3     According to facts supplied by the Court of Appeals, this case originally arose from a civil action filed in the Montana Third Judicial District Court.  In March 2010 GTL filed suit against Greytak and Tanglewood (hereafter, Greytak) for non-payment of an obligation arising from a construction project.  GTL was insured by Atlantic Casualty under a commercial general liability policy.  In March 2010 Greytak sent a letter to GTL asserting that it had grounds for various counterclaims involving construction defects, and in November 2010 Greytak filed counterclaims against GTL in the state court action.

¶4     In April 2011 GTL and Greytak entered a settlement agreement that required GTL to notify Atlantic of Greytak's counterclaims.  GTL and Greytak also agreed that if Atlantic did not appear to defend the case and did not file a declaratory action on the coverage issue, GTL would allow judgment to be entered against it and in favor of Greytak for $624,685.14 plus costs.  If Atlantic did appear to defend, Greytak could

3

pursue its claims to judgment; Greytak would look only to Atlantic for recovery; and Greytak would insure that GTL would have no responsibility for any resulting judgment. Finally, the agreement provided that if Atlantic filed a declaratory action, Greytak would defend with the purpose of establishing coverage for GTL. On May 23, 2011, GTL notified Atlantic of Greytak's counterclaims. Greytak separately notified Atlantic of its counterclaims on August 5, 2011.

¶5 On January 23, 2012, Atlantic sued GTL and Greytak in the United States District Court for the District of Montana, seeking a declaration that it was not required to defend GTL from Greytak's counterclaims or to pay any judgment. GTL defaulted and is not participating in the case. Atlantic's policy issued to GTL stated that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim . . . if a claim is made or 'suit' is brought against any insured, you must notify us as soon as practicable. You must see to it that we receive written notice of the claim or 'suit' as soon as practicable." Atlantic sought a declaration that it was not required to provide coverage of Greytak's counterclaims because GTL had not provided timely notice as required by the policy language.

¶6 The United States District Court granted Atlantic's motion for summary judgment and denied Greytak's motion for summary judgment. The District Court found that Atlantic did not have timely notice of Greytak's claims against GTL and therefore was excused from providing coverage under the policy. The United States District Court found that Montana law did not require Atlantic to demonstrate that it was prejudiced by

4

GTL's failure to provide timely notice of Greytak's counterclaims. Greytak appealed to the United States Court of Appeals for the Ninth Circuit.

## DISCUSSION

¶7    In the declaratory judgment action, the United States District Court concluded that Atlantic had no duty to defend or indemnify GTL on Greytak's claims because GTL's notice of the claim to Atlantic was untimely. The District Court found that Atlantic's Commercial General Liability policy was clear in its requirement that GTL provide timely ("as soon as practicable") notice of the Greytak counterclaims. The District Court, relying on *Steadele v. Colony Insurance*, 2011 MT 208, 361 Mont. 459, 260 P.3d 145, concluded that compliance with the notice requirement in the insurance contract was a condition precedent to coverage, barring recovery under the policy unless the requirement is met or waived. Reviewing the facts, the District Court concluded that Greytak's April 30, 2010 demand letter to GTL triggered the notice requirement in the Atlantic policy, and that GTL's notice to Atlantic almost a year later was not timely. The District Court, again relying upon *Steadele*, held that Montana law did not require Atlantic to show that it was prejudiced by GTL's untimely notice, only that the notice was untimely.

¶8    The issue presented by the certified question is whether Montana law applies the "notice-prejudice" rule to the insurance policy that Atlantic issued to GTL; specifically, whether the policy provision requiring GTL to notify the insurer of a covered event "as

5

soon as practicable" can be invoked to bar coverage without a consideration of whether a delay in notification caused prejudice to Atlantic.[1]

¶9 Several cases have considered the status of the notice-prejudice rule under Montana law. In *State Farm Mutual Ins. Co. v. Murnion*, 439 F.2d 945 (9th Cir. 1971), the Court considered an insurance policy that required notification of an occurrence as soon as practicable. Applying Montana law, the Court held that while notice requirements in an insurance policy are given effect and are a condition precedent to the insurer's liability, the insured may provide proof of "timeliness of notice and excuse for delay" on the issue of whether the insurer is bound to provide coverage. In *Sorensen v. Farmers Ins. Exch.*, 279 Mont. 291, 927 P.2d 1002 (1996), the issue was whether the insured's settlement with a third party without notifying its insurer abrogated the insurer's duty to provide coverage. This Court applied the "no prejudice" rule adopted in other states, holding that "absent some showing of material prejudice to the underinsurance carrier, a claim for underinsured motorist coverage may not be precluded on a technicality." *Sorenesen*, 279 Mont. at 295, 927 P.2d at 1004. We applied the no prejudice rule as a matter of public policy, because denying coverage because of an action that can have no material effect on the insurer does not further the purpose of having insurance. *Sorensen*, 279 Mont. at 296, 927 P.2d at 1005, *followed in Augustine v. Simonson*, 283 Mont. 259, 264, 940 P.2d 116, 119 (1997). *See also XL Specialty Ins. Co. v. Patrol Helicopters, Inc.*, 2009 U.S. Dist. Lexis 118475 (D. Mont.) (Montana,

---

[1] It is clear from the policy language that it does not impose a specific time within which the insured must provide notice to the insurer.

consistent with the law in the majority of jurisdictions, would require an insurer to show prejudice before avoiding liability based upon the insured's failure to provide notice of a claim as soon as practicable); *BNSF Railway v. Cringle*, 2010 MT 290, 359 Mont. 20, 247 P.3d 706 (procedural time limits in statutes and regulations are subject to equitable application when a party fails to comply).

¶10     In *Steadele* this Court considered application of the notice-prejudice rule, but without expressly using that term in the analysis.  In that case, homeowners sued a contractor over defects in their home and in December 2008 took a default judgment when the defendant failed to appear.  Colony insured the defendant but never received notice of the controversy or the lawsuit until several months after judgment of $1.8 million had been entered against its insured.  Colony denied the plaintiff homeowners' demand to pay the default judgment because it had not received timely notice of the claim from its insured.  The homeowners sued, and the district court granted summary judgment to Colony based upon the late notice.  On appeal Colony argued that the failure to provide notice until after judgment was entered against its insured was a material breach of the insurance contract that caused Colony severe prejudice and therefore terminated its obligation under the policy.

¶11     This Court noted that exclusions from insurance coverage are to be narrowly and strictly construed because they are "contrary to the fundamental protective purpose of an insurance policy," and that policies are to be construed in favor of the insured and in favor of providing coverage.  *Steadele*, ¶¶ 18-19; *see also* § 28-1-408, MCA, providing that a condition that results in a forfeiture is to be strictly interpreted against the party for

7

whose benefit it was created. This Court also noted that the purpose of the notification requirement was to provide the insurer with the opportunity to "defend its interests and to prevent or mitigate adverse judgments." We cited older cases that held that notification is a condition precedent to coverage and that failure of notification will result in a bar to recovery from the insurer. *Steadele*, ¶¶ 21-22. Ultimately we determined that because Colony did not receive notice until after a judgment was entered against its insured, the failure to give notice was not *de minimis*, and Colony was "prejudiced in that it was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement and to develop a trial strategy." *Steadele*, ¶¶ 28-29.

¶12 *Steadele* should not be read to renounce the notice-prejudice rule. While the opinion did not expressly reference the rule, this Court upheld summary judgment for the insurer based in part upon our conclusion that the insurer had been prejudiced by the failure of notice and therefore was not required to provide coverage. We pointed to this conclusion of *Steadele* in *Newman v. Scottsdale Ins, Co.*, 2013 MT 125, ¶¶ 65-66, 370 Mont. 133, 301 P.3d 348. However, *Newman* held that an insurer waives the ability to rely upon a lack of notice required by the policy by relying upon other reasons for denying coverage. *Newman*, ¶ 68.

¶13 A majority of the states have adopted the notice-prejudice rule in insurance coverage disputes, requiring that the insurer demonstrate that it was materially prejudiced by not having received prompt notice or notice as soon as practicable of an event that could trigger coverage. *See Prince George's County v. Local Govt. Ins. Trust,* 879 A.2d 81, 94, n. 9 (Ct. App. Md.), listing the thirty eight states and two territories that have

8

adopted the rule as a matter of common law. Also as noted, this Court has adopted the notice-prejudice rule in several insurance dispute contexts, most recently in *Estate of Gleason v. Central United Life Ins. Co,* 2015 MT 140, ¶¶ 37-38, in the context of first-party (insured v. the insurer) insurance coverage disputes.

¶14 The public policy of Montana is to narrowly and strictly construe insurance coverage exclusions in order to promote the "fundamental protective purpose" of insurance. *Steadele*, ¶ 18; *Newman*, ¶ 35. An insured's technical or illusory failure to comply with obligations of a policy will not automatically terminate coverage, and an insurer who does not receive timely notice required by the terms of an insurance policy must demonstrate prejudice from that lack of notice in order to avoid the obligation to provide defense and indemnification of the insured. This rule applies whether the claim arises from the insured as in *Gleason* or from a third party claiming damages as in the present case. The purpose of the notice-prejudice rule is to protect the insured or those claiming through the insured from a loss of insurance coverage over a technical violation of the policy when that violation is of no prejudicial consequence to the insurer. Nothing in *Steadele* should be construed to provide for any contrary rule. At the same time, a policy may include notice requirements, and an insured who fails to provide required notice to the insurer does so at his or her peril. If the insurer is able to show prejudice arising from the lack of notice, the insured may not be covered by the policy, as in *Steadele*.

¶15 Most of Atlantic's arguments were directed to the merits of a prejudice inquiry, which is outside the scope of the certified question and which we decline to address.

9

¶16    The Court of Appeals certified the question:

> Whether, in a case involving a claim of damages by a third party, an insurer who does not receive timely notice according to the terms of an insurance policy must demonstrate prejudice from the lack of notice to avoid defense and indemnification of the insured.

Our answer is: Yes, an insurer who does not receive timely notice according to the terms of an insurance policy must demonstrate prejudice from the lack of notice to avoid defense and indemnification of the insured.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER

Justice Jim Rice, specially concurring.

¶17    I concur in the Court's decision, as far as it goes. However, I believe that the facts set forth in the Certification Order also clearly establish that Atlantic has been prejudiced as a matter of law and that, under application of the principle we have adopted as the notice-prejudice rule, Greytak is entitled to no relief under the policy, as we held under similar circumstances in *Steadele*. The parties' briefs contain arguments regarding prejudice. In response to the Certified Question, I would address the prejudice issue, reformulating the question if necessary.

10

¶18     The Certification Order explains that the directive to give notice to the insurer[1] in the Atlantic policy is "identical" to the one at issue in *Steadele*. *Certification Order*, p. 6. About that provision, we concluded, as I have modified the language to reflect the current parties:

> This notice is in plain English; it is simple, clear, unambiguous and easy to understand. It sets forth [GTL's] duty to notify [Atlantic] 'as soon as practicable' of an occurrence, an offense which may result in a claim, or if suit is brought against [GTL]. This notice provision was intended to provide [Atlantic] the opportunity to defend its interests and to prevent or mitigate adverse judgments.

*Steadele*, ¶ 21. We also reasoned in *Steadele* that "this is not a case where the insured failed to notify its carrier by a few days or where the failure to notify was *de minimis*. Rather, here, MCHC failed to notify Colony for months after having been served with the Steadeles' summons and complaint." *Steadele*, ¶ 29. Despite the same simple, clear, easy to understand, "in plain English" notice provision that was at issue in *Steadele*, GTL failed to notify Atlantic of the claim—for a period of time longer than the delay involved in *Steadele*. Even giving the benefit of the doubt to the "notice" provided by GTL in its letter of May 23, 2011, GTL's failure to notify Atlantic of the claims stretched over a year, which, as in *Steadele*, is clearly not a *de minimis* delay.

¶19     Further, and critically, the extensive delay was not merely "dead time" in which nothing was happening. Like the Steadeles, GTL and the Greytak parties proceeded to litigate without the involvement or knowledge of Atlantic, to its detriment. A year into

---

[1] The Certification Order actually states that notice was to be given to the "insured," which is an error. The provision cited from the policy at issue in *Steadele*, like the one here, required that notice be given to the "insurer."

11

this effort, GTL and Greytak entered a settlement agreement that erected a potential judgment against GTL for the amount of $624,685.14, plus costs, and purported to do so in an *ultra vires* act that relieved GTL of its contractual obligations to cooperate with Atlantic. These actions, which are, in my view, sharp practice at best and collusion at worst, undoubtedly prejudiced Atlantic in the same way as the similar actions in *Steadele* prejudiced Colony Insurance.

¶20 Greytak attempts to shift the blame to Atlantic, arguing that Atlantic's delay in commencing a declaratory action was not "a reasonable time in which to take action, and as such Greytak was entitled to enforce the settlement agreement," and any prejudice against Atlantic was therefore rendered irrelevant. Greytak calculates this "delay" from GTL's May 23, 2011, letter, which it offers as satisfying the notice requirement under the Atlantic policy. Greytak overlooks that this letter did not disclose that an agreement had been reached that released GTL from its contractual obligations, did not provide the settlement agreement or settlement documents, and did not advise that a trigger for entry of a $624,000 judgment against the insured had been created by the settlement. Unsurprising, Atlantic's requests for cooperation in the investigation of the matter were thereafter rebuffed by GTL and its counsel, who were then surreptitiously operating under their settlement agreement with Greytak. These events simply further prejudiced Atlantic and justified the "delay" of which it is accused by Greytak.

¶21 We have adopted the notice-prejudice rule "in order to promote the 'fundamental protective purpose' of insurance," so that "[a]n insured's technical or illusory failure to comply with obligations of a policy will not automatically terminate coverage. . . ."

12

Opinion, ¶ 14. As the Court explains, the purpose of the notice-prejudice rule is to protect the insured from loss of insurance coverage over a technical violation of the policy when that violation is of no prejudicial consequence to the insurer. Opinion, ¶ 14. The rule is not intended to provide claimants and insureds a litigation Petri dish in which to grow stipulated judgments in the dark while the insured is relieved of its contractual obligations to involve the insurer. The rule does not abrogate the insured's duty to notify. It merely excuses failure of that duty when a "technical" violation does not prejudice the insurer. Opinion, ¶ 14. Here, GTL's violation was not "technical." It was contrived in order to prejudice Atlantic, which it clearly did.

¶22    I would further hold that Greytak does not receive the benefit of the rule.


/S/ JIM RICE


Justice Laurie McKinnon, specially concurring.

¶23    As I set forth in my concurrence and dissent in *Estate of Gleason v. Central United Life Insurance*, 2015 MT 140, ¶¶ 104-17, ___ Mont. ___, ___ P.3d ___ (McKinnon, J., concurring and dissenting) I agree generally with our adoption of the notice-prejudice rule. I have stated my reasons for doing so in *Gleason* and incorporate them here. Both contract and equitable principles support adoption of an alternative to the strict, traditional interpretation of notice provisions applied in our past decisions. If it were not for these principles, I would leave adoption of the notice-prejudice rule to the legislature.

¶24     I concur in the Court's answer to the certified question as framed. I also concur in Justice Rice's assessment that under the circumstances presented here, Atlantic has been prejudiced as a matter of law. During the course of litigation between GTL and Greytak, Greytak represented to the District Court that it was entitled to judgment in the amount of $624,685.14, pursuant to the settlement agreement. GTL did not respond, and judgment was entered (though subsequently set aside following a motion by Atlantic). Accordingly, like Justice Rice, I would hold that Atlantic was prejudiced as a matter of law. I would go further, however, and not limit application of this holding to the case at hand. As I stated in *Gleason*, ¶ 108 (McKinnon, J., concurring and dissenting), I would adopt a limited exception to the notice-prejudice rule providing that prejudice to the insurer will be presumed as a matter of law when an insured fails to notify the insurer of a pending lawsuit until after judgment has been entered.

¶25     We stray from those principles of contract and equity that supported our initial adoption of the notice-prejudice rule when we conclude that an insurer must demonstrate prejudice even after judgment against the insured has been entered. Such a conclusion is not supportable where the insurer has been deprived of all opportunity to defend, and the equitable reasons supporting a notice-prejudice rule are nonexistent. The mere entry of the adverse judgment is actual prejudice to the insurer. I would therefore hold, as a significant number of courts in other states have, that as a matter of law the insurer has been prejudiced where it has been deprived of all opportunity to defend. In those cases where an insured fails to notify the insurer of a pending lawsuit until after a judgment has been entered, prejudice exists as a matter of law.

14

¶26    The reasoning behind the inapplicability of the notice-prejudice rule in such circumstances is that the insured has presented the insurer with a *fait accompli* by delaying notice until after judgment.  The delay renders completely ineffective the purpose of the contractual notice requirement, as the insurer cannot exercise any of its rights to investigate, defend, control, or settle the suit.  Where the insurer has not been notified of a pending claim until after judgment, it is deprived of the benefit of a material term of the contract, and thereby prejudiced because it is not able to investigate the allegations, locate witnesses, appoint counsel of its choice, negotiate a settlement, or develop its own trial strategy.

¶27    There are a substantial number of cases from courts around the country that hold prejudice exists as a matter of law where an insurer has not been notified prior to settlement of a claim. *See Allstate Ins. Co. v. Occidental Intl., Inc.*, 140 F.3d 1, 5-6 (1st Cir. 1998) (holding under Puerto Rican law that the insurer was prejudiced as a matter of law when it received notice after the judgment because the insurer was deprived of the ability to investigate, locate witnesses, appoint counsel, negotiate a settlement, and develop a trial strategy); *Navigazione Alta Italia v. Columbia Cas. Co.*, 256 F.2d 26, 29 (5th Cir. 1958) (affirming the dismissal of the suit by the insured against the insurer because by "depriving the insurer . . . of all opportunity to defend against the claim, and thus completely abrogating its contract, the insured presents it with a *fait accompli* in the form of a final and satisfied judgment . . ."); *Champion v. S. Gen. Ins. Co.*, 401 S.E.2d 36, 38-39 (Ga. Ct. App. 1990) (holding insurer showed prejudice when it established that it received no notice until after a default judgment because it was denied all opportunity to

engage in discovery, conduct a defense at trial, and negotiate a settlement); *Allstate Ins. Co. v. Kepchar*, 592 N.E.2d 694, 699-700 (Ind. Ct. App. 1992) (holding prejudice established as matter of law where insurer received no notice of accident or suit until more than a year after trial); *Prince George's County v. Local Govt. Ins. Trust*, 879 A.2d 81, 100 (Md. Ct. Spec. App. 2005) (holding "the Trust was prejudiced as a matter of law when the County failed to notify the Trust of the incident, claim, and lawsuit until after an adverse judgment was entered."); *Lusalon, Inc. v. Hartford Accident & Indem. Co.*, 498 N.E.2d 1373, 1375 (Mass. App. Ct. 1986) (holding the failure of an insured to notify the insurer until after judgment was prejudicial as a matter of law), *aff'd on other grounds*, 511 N.E.2d 595 (Mass. 1987); *Hooper v. Zurich Am. Ins. Co.*, 552 N.W.2d 31, 36-37 (Minn. Ct. App. 1996) (holding as a matter of law that the insurer was prejudiced when the insured failed to notify it before an adverse judgment in one suit and a settlement in another); *Neckerman v. Progressive Ins. Agency*, 659 N.E.2d 843, 844 (Ohio Ct. App. 1995) (holding insurer was prejudiced as a matter of law because it was never notified of the lawsuit); *Metal Bank of Am., Inc. v. Ins. Co. of N. Am.*, 520 A.2d 493, 498 (Pa. Super. Ct. 1987) (holding as a matter of law that insurers were prejudiced when the insured notified the insurers of the suit after settlement because the insurers were presented with a *fait accompli* and were denied an opportunity to gain early control of the proceedings and to investigate); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174 (Tex. 1995) (holding failure to notify an insurer of a judgment prejudiced the insurer as a matter of law because the insurer could not defend the insured and minimize liability); *Nw. Prosthetic & Orthotic Clinic, Inc. v. Centennial Ins. Co.*, 997

16

P.2d 972, 973 (Wash. Ct. App. 2000) (holding summary judgment was appropriate when the insured failed to notify the insurer before the insured settled because the insurer did not have a meaningful opportunity to investigate); *Gerrard Realty Corp. v. Am. States Ins. Co.*, 277 N.W.2d 863, 871 (Wis. 1979) (holding as a matter of law that the insurer was prejudiced by not receiving notice until after trial because the insurer was denied the opportunity to investigate, defend, or settle); *cf. Colonial Gas Energy Sys. v. Unigard Mut. Ins. Co.*, 441 F. Supp. 765, 770-71 (N.D. Cal. 1977) (holding insurer was prejudiced as a matter of law when insured notified it of a loss from a leaking gas tank only after it had repaired and resealed the tank, precluding investigation of the leak by the insurer).

¶28  The failure here consists of a total, absolute, and final failure to give notice, a failure completely fatal to the insurer and in undoubted breach of the insurance contract. Here, by its failure to comply with the conditions of the policy, Greytak has deprived Atlantic of all opportunity to defend against the claim, and thus presents the insurer with a *fait accompli* in the form of a judgment obtained in a suit in the defense of which the insurer has been deprived of all effective part.  It is frankly difficult to imagine how Atlantic could have suffered greater prejudice from the clear breach of its contractual right to prompt notice.[1]

---

[1]  As I state in *Gleason*, ¶ 114 (McKinnon, J., concurring and dissenting), I would impose a requirement that the insured, for the period of delay beyond the limits of timeliness, show that he or she was acting in good faith and that the delay was not purposeful.  Equity dictates that a bad-faith delay in notifying an insurer, even though no material prejudice results, should be considered when deciding whether the policy should be enforced.  Here, it is unlikely that Greytak could withstand such a factual inquiry.  Moreover, such an inquiry would be unnecessary if this Court were to adopt an exception to the notice-prejudice rule where a judgment has been entered.

¶29 The notice-prejudice rule is an equitable remedy that allows an insured to escape the harsh outcome of a complete forfeiture of coverage, for which consideration has been paid, where there has been no prejudice to the insurer. The notice-prejudice rule does not rewrite the insurance contract. It is recognition that in certain situations, strict adherence to terms of the contract would produce an inequitable result and a windfall to the insurer. Our consideration of the equities is heightened given the unequal bargaining position of the parties to an insurance contract, which is not a negotiated agreement. Where, as here, GTL and Greytak have secretly negotiated a settlement and attempted to have judgment entered in order to avail themselves of favorable UTPA jurisprudence from this Court, the equitable purposes of the notice-prejudice rule do not exist. Instead, the notice-prejudice rule serves to unfairly disadvantage a party in the litigation of their contractual rights.

¶30 As set forth in the special concurrence of Justice Rice, "GTL's violation was not 'technical.' It was contrived in order to prejudice Atlantic, which it clearly did." Opinion, ¶ 21 (Rice, J., specially concurrin). Here, Greytak sued GTL without notice to Atlantic, engaged in litigation for a year or longer without notice to Atlantic, excluded Atlantic from mediation and any negotiation regarding the claims, settled claims secretly upon terms that impeded Atlantic's investigation and defense, and manipulated circumstances to build a claim of bad faith against Atlantic.

¶31 I would hold that, as a matter of law, Greytak cannot avail itself of the notice-prejudice rule. In those cases where an insured fails to notify the insurer of a

pending lawsuit against him until after settlement of their claim, I would hold that prejudice exists as a matter of law.

/S/ LAURIE McKINNON