*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOTOR CITY HEATING & COOLING, INC,

       Plaintiff,

v

SECURA SUPREME INSURANCE COMPANY,

       Defendant/Cross-Defendant/Cross-
       Plaintiff-Appellant,

and

SECURA INSURANCE, OAKLAND INSURANCE
AGENCY, FREDERICK AGEE, and TAMMY
GREENLEE, Individually and as Next Friend of TG
and TA, Minors,

       Defendants,

and

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY,

       Defendant/Cross-Plaintiff/Cross-
       Defendant-Appellee.

UNPUBLISHED
June 22, 2023

Nos. 358031; 358629
Wayne Circuit Court
LC No. 18-013344-CB

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

This consolidated appeal involves a priority dispute between two insurance companies, defendant Secura Supreme Insurance Company ("Secura") and defendant Westchester Surplus Lines Insurance Company ("Westchester"), over which company's policy had primary responsibility to cover the defense of plaintiff Motor City Heating and Cooling ("Motor City") in

-1-

an underlying lawsuit. The insurers each moved for summary disposition, raising opposing arguments about the priority of coverage. The trial court held that Secura was primarily liable for the defense costs in the underlying action, so it granted Westchester's motion and denied Secura's motion. The trial court also awarded Westchester attorney fees and other costs incurred in the defense of Motor City and case-evaluation sanctions.

In Docket No. 358031, Secura appeals as of right the trial court's summary disposition order and its judgment awarding Westchester attorney fees and costs. In Docket No. 358629, Secura appeals as of right the trial court's order awarding Westchester case-evaluation sanctions. We affirm the trial court's order granting summary disposition in favor of Westchester because the court properly interpreted the parties' overlapping insurance policies. But we vacate the judgment for attorney fees and costs and vacate the award of case-evaluation sanctions, and we remand for reconsideration following an evidentiary hearing on the reasonableness of the awards.

## I. BACKGROUND AND PROCEDURAL HISTORY

The underlying lawsuit against Motor City involved allegations of carbon monoxide poisoning from a malfunctioning furnace that Motor City negligently repaired. During the relevant time period, Motor City had a commercial general liability insurance policy with Secura and a contractor's pollution liability policy with Westchester. Secura initially undertook the defense of Motor City in the underlying lawsuit but withdrew its defense in May 2018, at which point Westchester took over the defense.

In October 2018, Motor City brought suit against both insurers, alleging that the Secura policy provided primary coverage to Motor City and the Westchester policy provided excess coverage. As a result, Motor City claimed that Secura breached the parties' contract when it withdrew its defense. Motor City sought a declaration that it was entitled to coverage under the Secura policy. Soon after, Westchester filed a cross-claim against Secura, alleging that the Secura policy was primarily responsible for covering Motor City in the underlying action. Westchester further alleged that Secura had agreed to reassume the defense of Motor City on January 1, 2019, but refused to reimburse Westchester for expenses it incurred in defending Motor City from May 2018 until January 1, 2019. Westchester sought reimbursement for all costs it expended in defending Motor City, or alternatively, for any amounts in excess of its share of defense costs.

The two insurers filed motions for summary disposition on the issue of priority. Secura argued that the Westchester policy was specifically written to cover the types of risk at issue in the underlying litigation, and therefore the Westchester policy provided primary coverage. Secura contended that an analysis of the two policies' "other insurance" clauses was not warranted because the policies did not insure the same risks. Instead, Secura advocated that the trial court apply the "total policy insuring intent" test to determine that Westchester was primarily responsible for the costs incurred in defending Motor City in the underlying litigation. Alternatively, Secura argued that the defense costs should be prorated according to the policy limits of each policy. In its cross-motion for summary disposition, Westchester argued that interpretation of the respective "other insurance" clauses controlled the priority dispute. Interpreting these clauses, Westchester asserted that Secura had the primary and exclusive duty to defend Motor City in the underlying lawsuit, and therefore Westchester was entitled to reimbursement for all its costs incurred in defending Motor City.

The trial court granted Westchester's motion, denied Secura's motion, and held that Secura was the primary insurer. The trial court rejected Secura's attempt to apply the "total policy insuring intent" test, instead interpreting the plain language of the respective "other insurance" clauses. The court concluded that the pollution exclusion in the Secura Supreme policy was not applicable and determined that Secura was the primary insurer under the "other insurance" provisions in the Secura and Westchester policies.

Westchester later moved for entry of judgment, and Secura contested the reasonableness of the attorney fees and costs claimed by Westchester. The trial court entered a $434,341.41 judgment for Westchester, awarding it all of its requested fees and expenses incurred in its defense of Motor City in the underlying litigation, without holding an evidentiary hearing on Secura's challenge to the reasonableness of certain expenses. Westchester also moved for an award of case-evaluation sanctions under MCR 2.403(O). Secura did not dispute that Westchester was entitled to case-evaluation sanctions, but argued that the trial court should decline to award sanctions in the interests of justice. Secura also challenged the reasonableness of Westchester's requested attorney fees, including the reasonableness of the hours billed by Westchester's attorney, and argued that redacted invoices submitted by Westchester hindered its ability to determine whether the claimed legal services were causally related to Secura's rejection of the case-evaluation award. The trial court declined to apply the interest-of-justice exception and awarded Westchester case-evaluation sanctions of $47,235.52, but again did not hold an evidentiary hearing to address Secura's challenges to the reasonableness of the requested sanctions.

Secura now appeals the trial court's summary disposition order, judgment, and case-evaluation award.

## II. PRIORITY OF INSURANCE POLICIES

In Docket No. 358031, Secura challenges the trial court's holding that it was primarily responsible for providing defense coverage to Motor City in the underlying action. In particular, Secura contends that the trial court erred by refusing to apply the "total policy insuring intent" or the "closest to the risk" test to determine which insurance policy had priority.

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "The interpretation of a contract, such as an insurance policy, is also reviewed de novo." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021). On de novo review, we evaluate the legal issue independently, giving "respectful consideration, but no deference" to the trial court's conclusion. *Wasik v Auto Club Ins Assoc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355848); slip op at 2. Secura and Westchester moved for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The reviewing court considers affidavits, pleadings, depositions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing

party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).

## B. ANALYSIS

This case involves the proper interpretation of competing insurance provisions. Insurance policies are subject to the same principles of interpretation as any other type of contract. *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 616; 963 NW2d 695 (2020). The primary goal when interpreting an insurance policy is to honor the parties' intent. *Webb*, 335 Mich App at 507-508. We do so by assigning the words of the policy their plain and ordinary meaning and by applying unambiguous policy provisions as written. *Fashho*, 333 Mich App at 616.

When multiple insurance policies cover an insured for a particular risk, the priority of coverage falls into three tiers: "primary coverage," excess "other insurance" coverage, and "true" excess insurance. See *Bosco v Bauermeister*, 456 Mich 279, 284, 302; 571 NW2d 509 (1997). Secura and Westchester dispute which of their policies is responsible for providing primary coverage to Motor City in its defense of an underlying lawsuit, and which provides excess "other insurance" coverage. The answer turns on the proper interpretation of the "other insurance" clauses in the Secura and Westchester policies. These types of provisions "vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St Paul Fire & Marine Ins Co v American Home Assurance Co*, 444 Mich 560, 564; 514 NW2d 113 (1994).[1]

In determining whether Secura or Westchester has primary responsibility to defend Motor City under the competing insurance policies, Secura urges us to apply the "total policy insuring intent" test or the related "closest to the risk" test. The "closest to the risk" test requires courts to consider these three factors to determine priority:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

---

[1] "Other insurance" clauses fall into three general categories:

1. A pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event;

2. An escape or no-liability clause, which provides that there shall be no liability if the risk is covered by other insurance; and

3. An excess clause, which limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance. [*St Paul Fire & Marine Ins Co*, 444 Mich at 565 (quotation marks and citation omitted).]

(3) Does one policy contemplate the risk of the accident-causing instrumentality with greater specificity than the other policy, that is, is coverage of the risk primary in one policy and incidental to the other? [*Auto Owners Ins Co v Northstar Mut Ins Co*, 281 NW2d 700, 704 (Minn, 1979).]

The "total policy insuring intent" test is broader than the "closest to the risk" test because "it involves a more mechanical application of the three factors" set forth above, and it "applies when the policies were intended to cover risks differing in kind and in size[.]" *North Star Mut Ins Co v Midwest Family Mut Ins Co*, 634 NW2d 216, 223 (Minn Ct App, 2001). In jurisdictions that recognize the tests, reliance on either test is appropriate only if the "other insurance" clauses conflict and are irreconcilable. See *id*. at 222; *Hastings Mut Ins Co v Auto Ins Co of Hartford, Connecticut*, 780 F Supp 1153, 1156 (WD Mich, 1991).

Secura concedes that Michigan appellate courts have never formally adopted these tests but counters that these tests have not been expressly rejected either. Secura relies heavily on language from our Supreme Court's decision in *Frankenmuth Mut Ins Co, Inc v Continental Ins Co*, 450 Mich 429; 537 NW2d 879 (1995) ("*Frankenmuth*"), contending that *Frankenmuth* recognized that the vitality of the "total policy insuring intent" test. In *Frankenmuth*, 450 Mich at 433, our Supreme Court considered consolidated appeals in which it was asked to determine how to allocate defense costs among multiple no-fault insurers, each of which could be liable, to a degree, for a loss arising out of a single automobile accident. The Court stated that it was taking the opportunity "to clarify who should bear defense costs where seemingly overlapping duties to defend multiple insureds arise." *Id*. The Court explained that it was first necessary to look to the nature of each insurer's duty to defend its insured under the circumstances at issue. *Id*. at 435. In that case, the status of the primary insurer was clear, and under such circumstances, "the primary insurer is liable for the defense and its costs until its limit is paid." *Id*. at 437. The Court continued:

In circumstances not presented today, it may be difficult to clearly designate a primary insurer. In such circumstances, the next inquiry should be whether the terms of the policies at issue cover the same loss, the same risk, and the same subject matter. If there is exactly concurring coverage, it might be appropriate to prorate the costs of defense. However, *where there is a policy more specifically tailored to the circumstances of the claim, it would be appropriate to designate that policy as the primary insurer* and for that insurer to defend to the limits of its policy and be responsible for the accompanying defense costs. [*Id*. at 438 (emphasis added).]

Secura argues that although the Court did not identify Secura's proposed tests by name, the "sentiment" in the quoted passage is consistent with the rationale of these tests. Applied here, Secura contends that the Westchester policy is "more specifically tailored" to the loss in the underlying lawsuit, and therefore the Westchester policy is the primary insurer. See *id*. To begin with, the language relied upon by Secura is dictum and lacks precedential authority. Dictum is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *Ramos v Intercare Community Health Network*, 323 Mich App 136, 140 n 3; 916 NW2d 287 (2018) (quotation marks and citation omitted). The relevant passage from *Frankenmuth* began with "[i]n circumstances not presented today," signaling that the subsequent

language was unnecessary to the decision but was offered as guidance for future cases involving different facts. Thus, this passage does not constitute binding precedent.

But even giving this passage persuasive value, we conclude below that the competing "other insurance" clauses in the Secura and Westchester policies are reconcilable. Thus, it is unnecessary to consider which policy is "more specifically tailored to the circumstances of the claim." See *Frankenmuth*, 450 Mich at 438. The *Frankenmuth* Court reiterated the overarching theme that "where there are competing other insurance clauses, we will endeavor to reconcile them." *Id*. The Court also affirmed that "where there are disputes regarding the potentially conflicting duties to defend and to bear defense costs between multiple insurers for multiple insureds, we hold that the policies at issue should be honored to the greatest extent possible." *Id*.

Furthermore, in *St Paul Fire & Marine Ins Co*, 444 Mich at 578, which preceded *Frankenmuth*, our Supreme Court rejected the view that "other insurance" clauses are "automatically irreconcilable" because doing so would create a rule requiring the Court to "override the contractual language and, perhaps, the negotiated intent of the parties." The Court cautioned, however, that "it may be necessary to declare 'other insurance' clauses irreconcilable when the applicable portions of the two other insurance clauses are identical excess clauses." *Id*. at 577. Subsequently, in *Pioneer State Mut Ins Co v TIG Ins Co*, 229 Mich App 406, 414; 581 NW2d 802 (1998), this Court confronted a priority dispute involving substantively identical excess "other insurance" clauses. Consistent with *St Paul Fire & Marine Ins Co*, this Court explained that while "an effort should be made to reconcile competing 'other insurance' clauses where reasonably possible, 'excess' clauses with substantively identical meaning in the context of a particular case may not be reconciled." *Id*. "Rather, where there are two competing and 'mutually repugnant' 'excess' clauses, the courts should attempt to apportion coverage between the policies in a reasonably equitable manner." *Id*.

The foregoing cases illustrate that it is well-established in Michigan that when two insurance policies cover the same risk, courts should look to the plain language of the policies to determine which insurer is primarily responsible for covering an insured, i.e., tendering a defense, in accordance with the parties' intent as expressed in the policies. Only where it is "difficult to clearly designate a primary insurer," *Frankenmuth*, 450 Mich at 438, or the competing "other insurance" clauses are irreconcilable, *St Paul Fire & Marine Ins Co*, 444 Mich at 577, might it be necessary to consider which policy is more specifically tailored to the claim or equitably apportion coverage. Here, both policies cover the risk at issue here—bodily injury arising from carbon monoxide exposure—so it is necessary to examine the plain language of the respective "other insurance" clauses to determine the parties' intent and whether the clauses can be reconciled.[2]

_____

[2] Secura's argument that the policies do not insure the "same risks" is misplaced. The relevant risk is the loss alleged in the underlying lawsuit. If both policies did not insure against this risk, there would be no dispute over priority. "Disputes arise, as in this case, when two or more insurance policies covering the same risk contain such 'other insurance' provisions." *Pioneer State Mut Ins Co*, 229 Mich App at 411. While Secura's policy contained a pollution exclusion, that exclusion did not apply here. As Secura concedes in its brief on appeal, it "never argued that

The Secura policy's "other insurance" clause provides in pertinent part:

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

*This insurance is primary except when b. below applies*. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent, or on any other basis;

(a) *That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"*;[3]

(b) That is Fire Insurance for premises rented to you or temporarily occupied by your with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

---

the policy exclusion barred coverage for the carbon monoxide exposure claim made in the underlying case." Therefore, as to the claimed injury in the underlying matter, the parties agree that their policies contain overlapping coverage. In other words, in the absence of the Westchester policy, Secura recognizes that it would have necessarily covered Motor City's defense.

[3] Secura's policy defines "your work" as:

(1) Work or operations performed by you [the insured] or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g of Section I – Coverage A – Bodily Injury and Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.  [Emphasis added.]

Secura argues that its policy is excess of the Westchester policy under ¶ 4b(1)(a) of Secura's "other insurance" clause.  It is undisputed that the Westchester policy is not a fire, extended coverage, builder's risk, or installation risk policy.  But Secura contends that the Westchester policy constitutes insurance that is "similar coverage for 'your work.' "  Secura asks us to read that phrase broadly to apply to Westchester's pollution liability policy.  Westchester, on the other hand, counters that its policy is not "similar" to fire, extended coverage, builder's risk, or installation risk insurance, and thus ¶ 4b(1)(a) does not apply.

In resolving this dispute, Westchester urges us to apply the *ejusdem generis* doctrine to aid our interpretation, while Secura argues that the doctrine does not apply here.  "Under the *ejusdem generis* doctrine, when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed."  *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 63; 903 NW2d 197 (2017).  Generally, to decide whether the doctrine applies, "the operative inquiry is whether the context in which the general phrase appears indicates or implies that the drafters intended that the phrase be limited."  *Benedict v Dep't of Treasury*, 236 Mich App 559, 566; 601 NW2d 151 (1999).  We agree with Westchester that the *ejusdem generis* doctrine applies.

The operative question is whether the parties to the Secura policy intended that the phrase "similar coverage" would be limited to coverage of the same class as fire, extended coverage, builder's risk, or installation risk insurance.  The natural reading of ¶ 4b(1)(a) is that the Secura policy is excess to any fire, extended coverage, builder's risk, or installation risk insurance, or other coverage that is *similar* to those specific types of insurance.  If the phrase "similar coverage" was not narrowed by reference to the enumerated types of coverage, then "similar" would be rendered meaningless.  To the extent we can, we must construe the policy to give effect to every word.  See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003).  Our interpretation does so.

We also agree with Westchester that its pollution liability coverage is not "similar" to fire, extended coverage, builder's risk, or installation risk insurance.  As Westchester compellingly notes, the enumerated coverages under ¶ 4b(1)(a) are first-party property coverages for commercial work that protect the insured against property loss.  See *Colony Ins Co v Georgia-Pac, LLC*, 27 So 3d 1210, 1214 (Ala, 2009) (interpreting an identical provision to ¶ 4b(1)(a) and concluding that its language "refers solely to first-party property coverage").[4]  Thus, considering its proper context in the policy, "similar coverage" refers to other types of first-party property coverage.

---

[4] Caselaw from sister states is not binding, but we may consider it for its persuasive value. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

Westchester's policy is not such "similar coverage" because it provides third-party liability coverage to Motor City. For these reasons, the trial court correctly determined that none of the listed exceptions applied to make Secura the excess insurer, and therefore, under the policy, Secura's insurance coverage was primary.

Next, we turn to the "other insurance" provision of the Westchester policy to determine whether Westchester's policy also provided primary coverage or whether it applied in excess. The Westchester "other insurance" provision provides in pertinent part:

D. Other Insurance

If other valid and collective insurance is available to the insured for a loss we cover under this policy, our obligations are limited as follows:

1. Primary Insurance

This insurance is primary except when Paragraph 2 below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we share all that other insurance by the method described in Paragraph 3 below.

2. Excess Insurance

*If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by the policy shall apply in excess of and shall not contribute with other such insurance.*

\* \* \*

When this insurance is excess, we will have no duty under the policy to defend any claim(s) or suits(s) if any other insurer has a duty to defend the insured against that claim(s) or suit(s). If no other insurer defends a loss covered under this policy, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers. [Emphasis added.]

Because other insurance from Secura was available to Motor City, the insurance afforded under the Westchester policy applied in excess, and did not contribute with the insurance offered by Secura.[5] Therefore, the trial court did not err by holding that a review of the "other insurance" clauses in the two policies revealed that Secura was the primary insurer and had primary responsibility for tendering defense coverage for Motor City in the underlying litigation.

---

[5] Secura's alternative request for equal proration of the defense costs also lacks merit. Under the Secura "other insurance" clause, sharing of contributions is required only when Secura's insurance is primary *and* the other insurance is also primary. As we have concluded, the Westchester policy provides excess, not primary, coverage.

Additionally, because the "other insurance" provisions are reconcilable and provide that Secura is the primary insurer, we reject Secura's invitation to ignore the policies' plain language and instead apply the "total policy insuring test" or the "closest to the risk" test. This conclusion honors the parties' intent to the greatest extent possible. See *Frankenmuth*, 450 Mich at 438. For these reasons, the trial court properly granted Westchester's motion for summary disposition.

## III. JUDGMENT AND AWARD OF CASE-EVALUATION SANCTIONS

In Docket No. 358031, Secura argues that the trial court erred by awarding a judgment for Westchester for the attorney fees and costs it incurred in the underlying litigation without permitting Secura to contest the reasonableness of the requested amounts at an evidentiary hearing. In Docket No. 358629, Secura challenges the award of case-evaluation sanctions to Westchester, arguing that the trial court erred by declining to apply the "interest of justice" exception and failing to hold an evidentiary hearing on the reasonableness of attorney fees.

### A. STANDARDS OF REVIEW

We review the trial court's decision whether to conduct an evidentiary hearing for an abuse of discretion. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 364; 941 NW2d 685 (2019). Likewise, we review for an abuse of discretion a trial court's determination of an award of attorney fees and costs. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *Id*. Furthermore, we review de novo a trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O). *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). But we review a trial court's decision to invoke the interest-of-justice exception for an abuse of discretion. *Sabbagh*, 329 Mich App at 364.

### B. INTEREST-OF-JUSTICE EXCEPTION

We will first address Secura's argument that the trial court abused its discretion by declining to apply the interest-of-justice exception, which would have allowed Secura to avoid otherwise mandatory case-evaluation sanctions.

During case evaluation, Westchester accepted and Secura rejected the panel's evaluation of an award in favor of Westchester. Westchester eventually moved for case-evaluation sanctions under MCR 2.403(O), seeking attorney fees and costs that it incurred after Secura rejected the case-evaluation award.[6] At the time, MCR 2.403(O) provided in relevant part:

> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing

---

[6] MCR 2.403 was amended in 2022 to omit all of MCR 2.403(O). During the relevant period of this case, MCR 2.403(O) remained in effect.

-10-

party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

* * *

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

* * *

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judgment for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing themselves or the entity for whom they work, including the time and labor of any legal assistant of as defined by MCR 6.626.

MCR 2.403(O)(11) also set forth the interest-of-justice exception:

If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

Secura does not dispute that, absent the interest-of-justice exception, it is liable for case-evaluation sanctions under MCR 2.403(O)(1). The general purpose of case evaluation is to encourage settlement, "as it deters protracted litigation with all its costs and also shifts the financial burden of trial onto the party who imprudently rejected the case evaluation." *Smith*, 481 Mich at 528 (opinion by TAYLOR, C.J.). In accordance with that purpose, the interest of justice does not preclude an award of actual costs absent "unusual circumstances." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 390; 689 NW2d 145 (2004) (quotation marks and citations omitted). That is, "a grant of fees . . . should be the rule rather than the exception." *Id*. (quotation marks and citations omitted). In *Sabbagh*, 329 Mich App at 365, this Court discussed the types of unusual circumstances that might justify application of the interest-of-justice exception:

[I]nvocation of the exception might be appropriate if there is an issue of first impression; if the law is unsettled and substantial damages are at issue; if a party is indigent and an issue should be decided by a trier of fact; or if there may be a significant effect on third persons.

Secura argues that this case involved an issue of first impression, thereby justifying application of the interest-of-justice exception, because it was urging the trial court to adopt the "total policy insuring intent" or "closest to the risk" tests in its interpretation of the subject policies. In the case-evaluation context, this Court has defined a "case of first impression" as a "case that presents the court with an issue of law that has not previously been decided by any controlling

legal authority in that jurisdiction." *Sabbagh*, 329 Mich App at 368, quoting *Black's Law Dictionary* (11th ed) (emphasis omitted). This Court in *Sabbagh* affirmed the trial court's decision to invoke the interest-of-justice exception because the case involved an issue of first impression—the application of binding Michigan Supreme Court precedent to a new context. *Sabbagh*, 329 Mich App at 369. Here, Secura's strategic choice, through counsel, to argue for application of the "total policy insuring intent" or "closest to the risk" test does not transform this case into one of first impression. These tests had never been adopted by Michigan appellate courts, and the language relied upon by Secura was dictum. As explained earlier, the trial court correctly interpreted and reconciled the two insurance policies on the basis of their plain language, consistent with well-established precedent in Michigan. Thus, this case does not involve "an issue of law that has not previously been decided by any controlling legal authority in that jurisdiction." *Sabbagh*, 329 Mich App at 368, quoting *Black's Law Dictionary* (11th ed) (emphasis omitted). Accordingly, the trial court did not abuse its discretion by failing to apply the interest-of-justice exception.

## C. TRIAL COURT'S FAILURE TO HOLD AN EVIDENTIARY HEARING

In Docket No. 358031, Secura argues that the trial court erred by entering judgment for Westchester without permitting Secura to challenge the reasonableness of the attorney fees and costs incurred in defending Motor City in the underlying litigation at an evidentiary hearing. Secura similarly argues in Docket No. 358629 that the trial court erred by not holding an evidentiary hearing before awarding attorney fees as case-evaluation sanctions.

Preliminarily, we agree with Secura that it was only liable for reasonable fees incurred in the defense of the underlying action. See *Cooley v Mid-Century Ins Co*, 52 Mich App 612, 615-616; 218 NW2d 103 (1974) ("An insurer who wrongfully refuses to defend an action against the insured, on the ground that the action was not within the coverage of the policy, is liable for reasonable attorney fees incurred by the insured in the defense of the action brought against them.").[7] Further, in any case involving a request for attorney fees, "the burden of proving the reasonableness of the requested fees rests with the party requesting them." *Smith*, 481 Mich at 528-529 (opinion by TAYLOR, C.J.)

In *Smith*, the controlling opinion of our Supreme Court explained the framework that trial courts should follow in determining a reasonable attorney fee award, with reference to the factors set forth in the Michigan Rules of Professional Conduct (MRPC) and *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982):

> [A] trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable

---

[7] Decisions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are still regarded as precedent and entitled to deference if not disputed by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors. [*Smith*, 481 Mich at 530-531 (opinion by TAYLOR, C.J.)][8]

The lead opinion stated that in the context of determining the reasonable number of hours expended by each attorney, the fee applicant is required to submit detailed billing records, which the trial court is required to examine, and the opposing party may contest for reasonableness. *Id.* at 532 (opinion by TAYLOR, C.J.). Recognizing that the fee applicant bears the burden of establishing its claimed hours with evidentiary support, the Court further instructed that "[i]f a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, *the party opposing the fee request is entitled to an evidentiary hearing* to challenge the applicant's evidence and to present any countervailing evidence." *Id.* (opinion by TAYLOR, C.J.) (emphasis added).

Eight years later, the Court, in the context of an attorney fee award in a no-fault action, refined the *Wood* and MRPC 1.5(a) factors into the following list to help trial courts decide whether the baseline award should be adjusted up or down:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

---

[8] "The lead opinion in *Smith* was authored by CHIEF JUSTICE TAYLOR and joined by JUSTICE YOUNG. JUSTICE CORRIGAN, joined by JUSTICE MARKMAN, concurred with the lead opinion in all but one respect, which does not implicate the present matter before us. Thus, although there was no majority opinion of the Court, CHIEF JUSTICE TAYLOR's opinion is controlling in the instant case." *Burton v State*, 340 Mich App 633, 644 n 7; 987 NW2d 879 (2022).

(8) whether the fee is fixed or contingent.  [*Pirgu*, 499 Mich at 281-282.]

In *Sabbagh*, 329 Mich App at 359, this Court stated that an evidentiary hearing should generally be held when a party is challenging the reasonableness of attorney fees, but an evidentiary hearing is not required "if the parties created a sufficient record to review the issue." In that case, the defendant produced a billing summary that summarized the attorney fees that it sought to recover as part of its case-evaluation sanctions. *Id*. The plaintiffs challenged the request for attorney fees, specifically arguing that the charged hourly billing rate far exceeded the relevant average rate for civil litigators, that the billing was in fact "quadruple billing," and that the defendant was attempting to recover costs that were not properly recoverable under MCR 2.403. *Id*. This Court acknowledged that although some factors could be addressed outside the context of an evidentiary hearing, others could not. *Id*. at 360. This Court determined that the record was not sufficient to enable the trial court to weigh " 'the experience, reputation, and ability of the lawyer or lawyers performing the services.' " *Id*., quoting *Smith*, 481 Mich at 530. This Court also reasoned that it was not possible to determine whether certain aspects of the billing at issue amounted to quadruple billing on the basis of the existing record. *Sabbagh*, 329 Mich App at 360. Accordingly, the trial court abused its discretion by failing to conduct an evidentiary hearing.

In this case, in its response to Westchester's motion for entry of judgment, Secura challenged the reasonableness of the attorney fees and costs claimed by Westchester, and specifically requested an evidentiary hearing.  Secura complained that Westchester only provided "vague ledgers of amounts it allegedly paid," rather than detailed invoices, which hindered and undermined Secura's ability to determine the reasonableness of the requested fees and costs. Secura also requested an evidentiary hearing at the hearing on Westchester's motion for entry of judgment and motion for case-evaluation sanctions.  The trial court did not directly rule on the request, but the court questioned whether an evidentiary hearing was necessary and ordered the parties to enter into facilitation.  With facilitation apparently unsuccessful, the parties filed supplemental briefs. In its supplemental brief, Secura observed that, under *Smith*, Westchester had to produce detailed records, which Secura could examine and contest for reasonableness.  Secura challenged several of the billing entries for Westchester's claimed attorney fees, totaling $18,886.50, and requested that the trial court reduce the judgment by that amount.  Westchester questioned Secura's right to audit its fees, but maintained that all of its requested fees and costs were reasonable and necessarily incurred in its defense of Motor City in the underlying litigation.

As our Supreme Court stated in *Smith*, 481 Mich at 532 (opinion by TAYLOR, C.J.), "[i]f a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence."  Secura challenged the reasonableness of Westchester's requested attorney fees, and there was a factual dispute over the reasonableness of the hours billed by Westchester's attorneys. Although an evidentiary hearing is not required if the record is sufficient to allow the trial court to review the issue, *Sabbagh*, 329 Mich App at 359, and Westchester argues that detailed invoices were available for the trial court to examine *in camera*, Secura challenged the adequacy of the records submitted by Westchester and argued that they were insufficient to establish the reasonableness of the requested fees and costs. Secura primarily challenged the number of hours billed and questioned whether many tasks billed by Westchester's attorneys took as long as they claimed.  Secura was entitled to an evidentiary hearing on its challenge to the reasonableness of these fees because, just like in

-14-

*Sabbagh*, the record was not sufficient to enable the trial court to weigh " 'the experience, reputation, and ability of the lawyer or lawyers performing the services.' " *Sabbagh*, 329 Mich App at 360, quoting *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.).[9]

Westchester claims that the attorney fees it paid should be *presumed* reasonable, but it was Westchester's burden to establish the reasonableness of its requested attorney fees. See *Smith*, 481 Mich at 528-529 (opinion by TAYLOR, C.J.) Moreover, in the judgment, the trial court held that Secura was not permitted to "now challenge or second guess those costs and attorney fees," suggesting that Westchester was entitled to all of its incurred fees and costs, without examining them for reasonableness. As stated earlier, Secura was only liable for reasonable attorney fees incurred in the defense of the underlying action. *Cooley*, 52 Mich App at 615-616. Therefore, we vacate the judgment for Westchester and remand this case to the trial court. On remand, the trial court must permit Secura to challenge the reasonableness of those fees and costs at an evidentiary hearing and determine an appropriate award of reasonable attorney fees and costs incurred by Westchester in defense of Motor City in the underlying litigation.

The trial court also erred by refusing to hold an evidentiary hearing before deciding on a reasonable award of attorney fees as case-evaluation sanctions. In Secura's response to the renewed motion for case-evaluation sanctions, it continued to vigorously contest the reasonableness of the hours billed by Westchester's counsel, and it also questioned why several of the invoices that Westchester submitted were redacted, which it argued hindered its ability to determine whether the legal services performed were causally connected to its rejection of the case-evaluation award. Because of these disputes, the trial court should have conducted an evidentiary hearing to allow Secura to explore these issues. See *Smith*, 481 Mich at 532 (opinion by TAYLOR, C.J.). Accordingly, we also vacate the case-evaluation award and remand for reconsideration of an appropriate award of case-evaluation sanctions following an evidentiary hearing.

## IV. CONCLUSION

In Docket No. 358031, we affirm the trial court's order granting summary disposition for Westchester, vacate the trial court's judgment, and remand for further proceedings consistent with

---

[9] We find no merit to Westchester's argument that Secura waived its ability to challenge the trial court's failure to hold an evidentiary hearing. Westchester contends that, because Secura did not renew its request for an evidentiary hearing after the unsuccessful facilitation, Secura waived the issue for appeal. As discussed earlier, Secura expressly requested an evidentiary hearing twice and continued to contest the reasonableness of several of Westchester's requested attorney fees. The trial court never held an evidentiary hearing and entered judgment based on the documents and briefing provided by the parties. Secura did not waive its argument because it raised the issue below. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (explaining that "a litigant must preserve an issue for appellate review *by raising it in the trial court*" and that the failure to do so generally review of that issue on appeal) (emphasis added). Similarly, Secura did not waive its request for an evidentiary hearing on the award of attorney fees as case-evaluation sanctions. Secura made its request at the joint hearing on Westchester's motion for entry of judgment and motion for case-evaluation sanctions.

-15-

this opinion.  In Docket No. 358629, we vacate the trial court's award of case-evaluation sanctions and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett